## G. E. NELSON v. BERTHA M. MOORE.[1]

February 15, 1935.

No. 30,014.

[1]Reported in 258 N. W. 828.

456

*John A. Nordin,* for appellant.

*Fowler, Carlson, Furber & Johnson* and *Goodrich M. Sullivan,* for respondent.

HOLT, JUSTICE.

Plaintiff appeals from a judgment entered on the findings. Before its entry unsuccessful motions were made for amended findings or a new trial.

The complaint alleged that in trading 300 shares of capital stock of the Moore's Store, Inc., owned by defendant, for certain real estate owned by plaintiff, it was represented that the outstanding indebtedness of the corporation was $7,500, and its promissory note for $2,500, held by a bank at Pierre, South Dakota, where the business of the corporation, conducting a dry goods and clothing store, was carried on. And it was alleged that plaintiff, in reliance upon the truth of the representation, made the trade; that the representation was false and was made solely to induce plaintiff to enter the transaction; that the outstanding indebtedness of the corporation was in fact $13,608.22 instead of $7,500, as represented, besides the $2,500 promissory note mentioned; that plaintiff, to save his investment, was obliged to pay this additional indebtedness of $6,108.22, for which judgment is asked with expenses and attorneys' fees incurred. The written contract of exchange, executed April 1, 1929, and a supplemental contract, executed April 16, 1929, were made part of the complaint. The answer denied the alleged fraudulent representation, admitted the execution of the contracts, and set up a counterclaim based upon alleged misrepre-

sentations by plaintiff of the real estate given in exchange for the shares of stock, and a second counterclaim based upon conversion of some accounts of defendant's. No evidence was offered in respect to the second counterclaim.

The court found, in short, that when the trade was made defendant had segregated from the merchandise of the corporation a quantity of goods which had been bought with the privilege of returning the same to the sellers, which goods so segregated were kept at defendant's home and were of the value of about $5,000; that it was understood between plaintiff and defendant, when the deal was made, that if plaintiff accepted the merchandise kept at defendant's home and placed it in the stock at the store the indebtedness would be increased by the amount of the price thereof above that specified in the contract; and that at the request of plaintiff the segregated merchandise at defendant's home was delivered to the place of business of the corporation and placed in its stock, thereby increasing its indebtedness to approximately $12,500; and that there was no fraudulent representation made by defendant as to the indebtedness of the corporation. The court also found that before defendant executed the contracts she visited and examined the premises she accepted in the trade and relied solely on such examination, and not upon the representations regarding the same made by plaintiff. Judgment was directed to be entered that each party take nothing, with no costs or disbursements.

Numerous objections were made by plaintiff to the introduction of evidence of the merchandise kept at defendant's home, how it came to be brought back to the store, the time when invoices thereof were entered in the books of the corporation, and of the conversations of the parties that such merchandise be added to the stock in the store, increasing the indebtedness of the corporation; such objections being based on the well known rule of law that written contracts could not be varied or modified by parol, that all negotiations and talks prior to their execution were merged in or reduced to the written terms. Plaintiff overlooks the fact that this is not an action on the contracts, but one wherein he comes into court and accuses defendant of fraud and misrepresentation to his

damage. It is true that in this instance the representation in regard to the indebtedness of the corporation, the only thing alleged as misrepresented, is in writing. In the contract of April 1 it is stipulated not to be more than $7,500, and by the supplemental contract of April 16 it was expressly admitted by defendant that such indebtedness had been represented to be $7,500, "and no more," and defendant personally agreed "that if it should appear that the said corporation was indebted or is indebted more than the said sums above set forth, the said Bertha M. Moore hereby agrees personally to hold said corporation harmless for such excess amount, if there be any, and to personally pay the same, and so promises, agrees and binds herself, and heirs." In view of this specific agreement, it is difficult to understand why an action for fraud and deceit was brought. But, as stated, the representation respecting the amount of the corporation's debt was here in writing, and the burden of plaintiff was to show that it was false. Manifestly, he had to go outside the contracts so to prove. It was attempted by the introduction of a ledger of the corporation. There is no rule of law which would prevent defendant from introducing oral testimony identifying the entries in the ledger with the goods to which they pertain, or to explain when or how the entries came to be made, or to refer to other books kept, which might throw light on the ledger entries.

Where a plaintiff charges fraud against a defendant and the law permits plaintiff so to prove by parol testimony, even though the written contract made by the parties declares that no representations other than those contained therein were made, the defendant surely cannot be denied the right to meet such proof by testimony of like character. Ganley Bros. Inc. v. Butler Bros. Bldg. Co. 170 Minn. 373, 212 N. W. 602, 56 A. L. R. 1; National Equipment Corp. v. Volden, 190 Minn. 596, 252 N. W. 444, 835. The instant case is not one based on a written contract as was Shinners v. Ford, 151 Minn. 328, 186 N. W. 704, where it was held that, even though the subject matter may be identified by parol, such evidence may not contradict or vary the provisions committed

to writing. We may also say that in this instance the contract itself limits the merchandise involved in the transaction thus:

"It is understood that all of the property, including stocks of merchandise, furniture and fixtures, now located in the store of said corporation in the Hyde Block, city of Pierre, county of Hughes, state of South Dakota, is the property of said corporation."

This apparently does not include the goods defendant kept in the home, and the provision itself furnishes the basis for introduction of oral testimony to identify merchandise not at the store. We do not find any ruling on the admission or exclusion of evidence which would authorize a new trial.

Plaintiff makes some contention that consideration should be given to the fact that what plaintiff obtained was shares of stock in a corporation and not the merchandise or store of the corporation subject to the indebtedness. No legal consequences should follow in this case because of such distinction. It does not appear that there was a single share of capital stock of the corporation outstanding other than the 300 shares defendant transferred to plaintiff. She appeared to have conducted the business of the store as if she individually was the sole owner, and for aught that appears plaintiff did the same thing after the deal when the store was turned over to him. At any rate, we may assume that plaintiff acquired substantially the whole interest of the corporation in the store conducted in the Hyde Block at Pierre, subject to the indebtedness.

On the merits of the action plaintiff vigorously attacks two findings of fact, viz.: (a) The one that defendant had about $5,000 worth of merchandise in her home, bought with the privilege of returning the same to the sellers, which the parties understood was not to be a part of the transaction, but that if plaintiff desired to make that merchandise a part of the stock of the corporation, it should be brought to the store and incorporated into the stock in trade. In such event the indebtedness of the corporation would be increased by the purchase price of such added merchandise; that after the deal plaintiff requested that such merchandise be brought

to the store, and that it was so done. And (b) that defendant made no misrepresentations as to the indebtedness.

The story told by defendant and her brother-in-law with respect to the merchandise kept at her home is so at variance with honestly conducted mercantile business as to stagger belief therein. Here is a clothing and dry goods business conducted in a store in a business block of the city, the stock therein being valued at $25,000. She claims that in anticipation of the spring trade and perhaps in case of her selling the business, she had ordered from wholesalers this extra merchandise of about $5,000 with privilege of returning the same. She does not state within what time. These goods were evidently shipped to the corporation and delivered at the store, unless shipment came by mail or express—all of which is suspicious. The evidence is unsatisfactory as to whether the packages in which the goods came were opened in the store and invoices there checked. The inference is that they were carried to the home, six or seven blocks distant from the store, at various times during the months of February and March preceding the deal with plaintiff. The evidence does not disclose that there was lack of room in the store, nor what room there was in her six-room home, nor how bulky this $5,000 worth of merchandise was. Defendant was a business woman who maintained a home. She could not well do so without help in the home. If such there were, or others who lived with her, it should not have been difficult to prove satisfactorily that this merchandise was stored there. Although defendant's evidence on the issue of the merchandise in her home is far from convincing, plaintiff proved by one who worked in the store, both before and after the trade, that a month or so before plaintiff and defendant met merchandise was carried in a Buick car, at the direction of the brother-in-law, from the store to a room in defendant's home, but it was to be distinctly remembered by the witness that this was merchandise on "consignment." Still another employe of the store testified to seeing goods brought back after plaintiff took charge. As against this, plaintiff testified that nothing was ever said about any goods in the home, that none were ever brought from there to the store after he took charge. He

produced the assistant bookkeeper, who gave testimony reflecting on the honesty of the dealings of defendant and her brother-in-law with plaintiff, while they remained in the employ of the corporation after plaintiff was in charge. She stated that entries in the books of account were falsified; that shortly before defendant and her brother-in-law left, two books, the remittance book and the return book, were missed and never found; that she was in the store all the time and never knew of any merchandise being sent or taken to defendant's home nor of any being returned to the store after the deal. Defendant's evidence tended to show that plaintiff had destroyed or put away some of the old invoices and papers, and left the inference that the two books mentioned, which were claimed to be the only books available to show the stock on hand and the amount due and unpaid thereon, were destroyed by plaintiff. It is apparent from this cursory statement that the evidence presented an irreconcilable conflict on the main issue. If there was a $5,000 stock of merchandise at defendant's home, and the two parties discussed whether it should be brought to the store and added to the stock, thereby increasing the corporate indebtedness by that amount, this cause of action for fraud and deceit fails. The burden was on plaintiff to prove the fraud alleged and that it induced him to make the exchange. The trial court had a right to consider that the guaranty which plaintiff got two weeks after the exchange contract was signed indicates that no reliance was placed on mere representations. The taking of this supplementary agreement is suggestive of some suspicion that everything might not be as expected. The contract itself was carefully drawn to protect plaintiff. It provided that if plaintiff desired he could have an inventory of the stock in the store taken on his return to Pierre—the contract being executed in Minneapolis—to begin about April 3 or 4, 1929, and that plaintiff would decide on his return whether or not he desired the inventory taken, based on the wholesale cost price of the same, "should said merchandise not invoice the sum of $25,200.00, it is agreed that the difference shall be deducted from the purchase price or agreed thereon by the parties as to the difference."

462

The rule is too well settled to need citation of authorities that where findings of fact are made by a trial court upon conflicting testimony an appellate court is not justified in disturbing the findings made. We do not pass on the veracity of witnesses who do not agree. We have not the opportunity the trial court had of seeing and hearing the witnesses as they were testifying. Having reached the conclusion that the findings made are supported, it necessarily follows that findings of a contrary import requested by plaintiff cannot be held called for by the evidence. We do not reach the question of the measure of damages, since the cause of action plaintiff alleged was not established.

The judgment is affirmed.

[1]Reported in 258 N. W. 821.